**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 17-1986**

SHARI RENEE NAUFLETT,

Petitioner - Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent - Appellee.

Appeal from the United States Tax Court. (Tax Ct. No. 024427-15)

Argued: May 9, 2018                                    Decided: June 14, 2018

Before TRAXLER, AGEE, and WYNN, Circuit Judges.

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Traxler and Judge Wynn joined.

**ARGUED:** Allison Bray, HARVARD LAW SCHOOL, Jamaica Plain, Massachusetts; Carlton Malben Smith, New York, New York, for Appellant. Richard Caldarone, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee**. ON BRIEF:** T. Keith Fogg, Director, Harvard Federal Tax Clinic, HARVARD LAW SCHOOL, Jamaica Plain, Massachusetts, for Appellant. David A. Hubbert, Acting Assistant Attorney General, Francesca Ugolini, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

AGEE, Circuit Judge:

Shari Renee Nauflett appeals from the dismissal by the United States Tax Court of her petition for relief from unpaid tax liability based on spousal innocence. Nauflett filed her petition one week after the expiration of the 90-day filing requirement in section 6015(e)(1)(A)(ii) of the Internal Revenue Code. The Tax Court held that the 90-day filing requirement is jurisdictional and thus cannot be excused for any reason. Nauflett argues that the deadline is instead a claim-processing rule subject to equitable tolling, and she alleges that she is entitled to have the deadline equitably tolled because the Internal Revenue Service (IRS) told her—incorrectly—that she had until the day she filed her petition to do so. For the reasons set out below, we affirm the Tax Court's order dismissing her petition for lack of jurisdiction.

I.

The IRS charged Shari and Derek Nauflett, wife and husband and joint income tax filers, as jointly and severally liable for unpaid taxes, interest, and penalties for tax years 2002–04 and 2008.[1] Nauflett requested relief under the innocent spouse doctrine.[2] The letters of final determination from the IRS denying Nauflett's request were dated June 17, 2015, and contained the following statement: "If you disagree with our decision, you can file a petition with the United States Tax Court to review our denial. You must file your

---

[1] This case involves only Shari Nauflett ("Nauflett").

[2] "[T]he Tax Code provides relief from tax liability for an individual, who was a joint filer but did not know or have reason to know that there was an understatement on the tax return." *Jones v. Comm'r*, 642 F.3d 459, 460 (4th Cir. 2011) (citing I.R.C. § 6015(b)).

petition within 90 days from the date of this letter. . . . [T]he IRS cannot change the time period." *E.g.*, J.A. 15.

Nauflett alleges that she contacted both the IRS contact person listed on the notification letter and an employee at the IRS Taxpayer Advocate Service for assistance in navigating the review process because she believed that she was entitled to relief as an innocent spouse. According to Nauflett, both individuals incorrectly informed her that she had until September 22, 2015, to file her petition.

Nauflett filed her petition for review in the Tax Court on September 22, 2015.[3] The IRS moved to dismiss Nauflett's petition for lack of jurisdiction, asserting that the petition was untimely. It pointed out that the notification letters were dated June 17, thereby fixing September 15, 2015—one week before Nauflett filed—as the last day to file a timely petition.

The Tax Court agreed with the IRS and dismissed Nauflett's petition for lack of jurisdiction. In doing so, the Tax Court relied on its previous decisions holding that the plain language of I.R.C. § 6015(e)(1)(A) conferred jurisdiction to consider only timely petitions for review. And while it expressed sympathy for Nauflett's circumstances, the Tax Court observed that the erroneous advice she allegedly received from two IRS employees was irrelevant under the plain language of the statute, which created a jurisdictional bar.

---

[3] Here, and as a general rule, the date of the postmark is the date the petition is deemed to be filed. *See* I.R.C. § 7502(a)(1).

Nauflett then moved to vacate the dismissal order, arguing again that the deadline was not jurisdictional and thus could—and should—be equitably tolled. The Tax Court denied Nauflett's motion and again rejected Nauflett's interpretation of the statute.

Nauflett noted a timely appeal from the Tax Court's orders. This Court has jurisdiction under I.R.C. § 7482(a)(1).

II.

This appeal presents a straightforward question: is the 90-day filing requirement in I.R.C. § 6015(e)(1)(A)(ii) jurisdictional? We review the Tax Court's interpretation of subsection (e)(1)(A) de novo. *See Starnes v. Comm'r*, 680 F.3d 417, 425 (4th Cir. 2012). While we have not previously considered the issue now before us, two of our sister circuit courts have held that subsection (e)(1)(A) is jurisdictional based on their reading of the plain language of the statute. *Matuszak v. Comm'r*, 862 F.3d 192 (2d Cir. 2017); *Rubel v. Comm'r*, 856 F.3d 301 (3d Cir. 2017). We agree.

When a filing deadline is jurisdictional, an untimely filing "deprives [the] court of all authority to hear [the] case." *United States v. Kwai Fun Wong*, 575 U.S. __, 135 S. Ct. 1625, 1631 (2015). The Supreme Court has undertaken in recent years to "ward off profligate use of" the label "jurisdictional" by adopting a "readily administrable bright line for determining whether to classify a statutory limitation as jurisdictional." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) (internal quotation marks omitted). Statutory language is jurisdictional only when "Congress has clearly stated that" it is. *Id.* (alteration & internal quotation marks omitted). That said, Congress need not "incant

4

magic words in order to" do so; rather, the statute's "context, including [the Supreme] Court's interpretations of similar provisions in many years past" is "probative of whether Congress intended a particular provision to rank as jurisdictional." *Id.* at 153–54 (internal quotation marks omitted). In the context of statutes of limitations and other filing deadlines, using mandatory language is not enough to classify the provision as jurisdictional. *See Kwai Fun Wong*, 135 S. Ct. at 1632 (noting that these provisions "seek to promote the orderly progress of litigation [rather than] deprive a court of authority to hear a case" (internal quotation marks omitted)). Instead, the question is whether a filing deadline limits "the power of the court rather than . . . the rights or obligations of the parties." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) (internal quotation marks omitted).

As with any case of statutory interpretation, we begin with the words Congress used in the statute. *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 562 U.S. 277, 283 (2011). The text of subsection (e)(1)(A) clearly demonstrates Congress's intent that its filing deadline is jurisdictional. The provision states that an individual claiming relief as an innocent spouse

> may petition the Tax Court (*and the Tax Court shall have jurisdiction*) to determine the appropriate relief available to the individual under this section if such petition is filed—
>
> (i) at any time after the earlier of—
>
>> (I) the date the Secretary mails, by certified or registered mail to the taxpayer's last known address, notice of the Secretary's final determination of relief available to the individual, or
>>
>> (II) [not applicable here], and

5

(ii) not later than the close of the 90th day after the date described in clause (i)(I).

§ 6015(e)(1)(A) (emphasis added).[4] By the statute's plain terms, Congress gave the Tax Court "jurisdiction[] to determine the appropriate relief available to the [taxpayer] *if* such petition is filed . . . not later than the close of the 90th day after the date described in clause (i)(I)." *Id.* (emphasis added). We need not look beyond that mandate because Congress has, in fact, uttered "magic words," expressly conditioning the Tax Court's power on the timely filing of a petition. *See Matuszak*, 862 F.3d at 196 (pointing to the statutory words "the Tax Court shall have jurisdiction . . . *if* [the] petition is filed" as proof that Congress "expressly conditioned the Tax Court's jurisdiction on the timely filing of a petition" (internal quotation marks omitted)); *Rubel*, 856 F.3d at 305 ("[W]e must presume that Congress knows that the term 'jurisdiction' refers to the authority of a court to hear and decide a case and that it deliberately included that word in the statute."). We could end our analysis with this unambiguous language in subsection (e)(1)(A). *See William v. Gonzales*, 499 F.3d 329, 333 (4th Cir. 2007) (stating that the Court's inquiry "is at an end" when the statutory language is "plain and the statutory scheme is coherent and consistent" because the Court's "sole function is to enforce [the statute] according to its terms" (internal quotation marks omitted)).

Nevertheless, additional support to our understanding of Congress's intent lies in the broader context of subsection (e)(1)(A) within § 6015. *King v. Burwell*, 576 U.S. __,

---

[4] Congress amended I.R.C. § 6015 in December 2015, but those amendments did not affect the provisions discussed in this opinion.

6

135 S. Ct. 2480, 2492 (2015) (discussing the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme" (internal quotation marks omitted)). Specifically, the language of subsection (e)(1)(B) reinforces our interpretation of subsection (e)(1)(A) in two ways. First, it prohibits the IRS from collecting assessed taxes "until the close of the 90th day referred to in" subsection (e)(1)(A). § 6015(e)(1)(B)(i). The two subsections work in tandem, with subsection (e)(1)(A) allowing taxpayers 90 days to file a petition challenging the assessed taxes, and subsection (e)(1)(B) barring the IRS from collecting the assessed taxes for that same 90-day period. Second, and more importantly, subsection (e)(1)(B) grants the Tax Court authority to enjoin a collection action, but says that "[t]he Tax Court shall have *no jurisdiction* under this subparagraph to enjoin any action or proceeding *unless a timely petition has been filed under subparagraph (A)*." § 6015(e)(1)(B)(ii) (emphases added). In both subsections, the Tax Court's specific enumeration of jurisdiction rests on the filing of a timely petition: under subsection (e)(1)(A), the Tax Court has jurisdiction over the taxpayer's petition for review only if it is timely filed, and under subsection (e)(1)(B), the Tax Court has jurisdiction over a taxpayer's attempt to halt a collection action only if the taxpayer filed a timely petition for review. As the Second Circuit observed with respect to this parallel language in the subsections, subsection (e)(1)(A) "represents the most obvious example of a jurisdictional rule, because Congress clearly *and repeatedly* expressed that it imposes a jurisdictional limit on the Tax Court's authority." *Matuszak*, 862 F.3d at 197 (emphasis added) (alteration & internal quotation marks omitted).

7

In the end, Nauflett relies only on strained readings and broad principles to urge us to reach a different result. But none of Nauflett's arguments overcome the plain language of the statute. She points to the equitable nature of the innocent spouse doctrine as a reason for believing Congress intended for the filing deadline to be subject to equitable tolling. But "[w]here, as here, Congress has balanced [the] interests and costs and embodied the result in an unambiguous statute, it is not for a court to depart from its words, whatever the equities of a particular case may be." *Anderson v. Dalkon Shield Claimants Tr.* (*In re A.H. Robins Co.*), 996 F.2d 716, 720 (4th Cir. 1993).

Nauflett makes several grammatical arguments, noting, for example, the placement of the jurisdictional language in subsection (e)(1)(A) in a prefatory clause somewhat removed from the clause containing the filing deadline. This argument ignores the natural reading of the subsection as a whole, as well as the proximity of the two within one subsection, even though that subsection is further divided. *Contra Kwai Fun Wong*, 135 S. Ct. at 1633 ("Congress's separation of a filing deadline from a jurisdictional grant indicates that the time bar is not jurisdictional."). And while it's true that proximity alone is not dispositive, the words here are more than that: they are part of the same sentence. *See Rubel*, 856 F.3d at 305 n.7 (rejecting petitioner's argument that § 6015(e)(1)(A), like the statute at issue in *Auburn Reg'l Med. Ctr.*, contains both jurisdictional and non-jurisdictional provisions because § 6015(e)(1) "speaks in jurisdictional terms by it[s] use of the word 'shall' and 'jurisdiction' in the same sentence").

Nauflett calls attention to the jurisdictional language's placement inside a parenthetical. But this designation has no consequence and does not strip the words of their ordinary meaning. As the Supreme Court has recognized, where there is "compelling textual evidence" that words inside parentheses have a particular meaning read alongside the other words in the statute, the fact that they are in parentheses does not alter that meaning. *See United States v. Woods*, 571 U.S. 31, 45 (2013).

Nauflett also relies on the general principle that filing deadlines are rarely jurisdictional. That may be true, but where Congress expresses its clear intent for a filing deadline to be jurisdictional, that settles the issue: it is jurisdictional. *See Matuszak*, 862 F.3d at 197–98 (observing the statute cannot be read any other way); *Rubel*, 856 F.3d at 305 n.7 ("Congress's use of language that 'speaks in jurisdictional terms' makes the deadline jurisdictional.").

Nauflett further points to the lack of legislative history or Supreme Court case law establishing that subsection (e)(1)(A) is jurisdictional. While such sources could be useful guides to determining whether a provision is jurisdictional in cases where the text is less clear, *e.g.*, *Auburn Reg'l Med. Ctr.*, 568 U.S. at 153–54, that is not the case here. The plain language of the statute speaks for itself, clearly establishing that the Tax Court has jurisdiction only over petitions filed during the 90-day period.

Because subsection (e)(1)(A) is jurisdictional, the Court lacks discretion to waive compliance based on equitable considerations. *See Kwai Fun Wong*, 135 S. Ct. at 1631. This is so despite Nauflett's allegation that the IRS employees she contacted for clarification of her obligations contributed to her petition being untimely. A misinformed

9

taxpayer faced the identical obstacle in *Rubel*. There, the taxpayer relied on a written statement from the IRS that she needed to file her petition for review by a date that turned out to be after the statutory 90-day deadline. 856 F.3d at 303. The taxpayer relied on that advice to her detriment, and the Tax Court dismissed her petition as untimely. *Id.* Even so, the Second Circuit recognized that subsection (e)(1)(A)'s deadline is jurisdictional and, under Supreme Court case law, "cannot be altered regardless of the equities of the case." *Id.* at 306 (internal quotation marks omitted). So, too, here. In sum, neither this Court nor the Tax Court can consider Nauflett's equitable arguments in light of the jurisdictional nature of subsection (e)(1)(A)'s 90-day filing deadline.

For the reasons set out above, the Tax Court correctly concluded that it lacked jurisdiction to consider Nauflett's untimely petition. In light of this holding, we do not consider Nauflett's additional arguments about equitable tolling, which are all predicated on subsection (e)(1)(A) being a non-jurisdictional filing deadline.

III.

The Tax Court's order dismissing Nauflett's petition for lack of jurisdiction is

*AFFIRMED.*

10